In re Moises **MARKIZER**, Debtor.

Moises **MARKIZER**, Plaintiff,

v.

Zoraida Markizer
**ECONOMOPOULOS**, Defendant.

**Bankruptcy No. 86–03080–BKC–SMW.
Adv. No. 86–0656–BKC–SMW.**

United States Bankruptcy Court,
S.D. Florida.

Nov. 18, 1986.

bles, Fla., and Robert Venney, Shutts & Bowen, Miami, Fla., for defendant.

Jeannette Tavormina, Trustee.

Arthur S. Weitzner, Weitzner & Gamberg, P.A., Miami, Fla., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard upon a Complaint to Determine Dischargeability of Debt under 11 U.S.C. Section 523(a)(5)(B) and Bankruptcy Rule 4007 and on a three count counterclaim, which urged this Court to abstain, to declare that a Florida corporation, Ardiyos Corporation, in which the debtor held a fifty percent ownership interest on the date of the filing, was not subject to this Court's jurisdiction, and to dismiss the petition due to the debtor's alleged failure to comply with 11 U.S.C. Section 727. The adversary complaint was filed on October 3, 1986 and tried with the counterclaim on October 24, 1986. The Court having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments and trial memoranda of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

This Court has jurisdiction over the parties and the subject matter.

The Plaintiff, Moises Markizer, and the Defendant, Zoraida Markizer Economopoulos, entered into a Child Custody and Property Settlement Agreement on January 24, 1986 in anticipation of their marriage being dissolved on January 30, 1986 in an uncontested proceeding in a Florida state court. The settlement agreement was modified on March 7, 1986. The agreement granted the Plaintiff residential custody of the one minor child, a sixteen year old boy, and it is undisputed that the plaintiff has continually provided for the minor son's support and is not seeking, herein, to have this

John W. Kozyak, Kozyak, Tropin & Throckmorton, P.A., Miami, Fla., for plaintiff/debtor Moises Markizer.

Rex B. Guthrie, Miami, Fla., James V. Johnstone, Maro and Johnstone, Coral Ga-

obligation modified or discharged in any manner.

The settlement agreement also provided for the division of a substantial amount of real, personal, and intangible property accumulated during the 24 year marriage. There is no substantial dispute that the Plaintiff complied with the provisions of the settlement agreement regarding the division of real property, bank accounts, furniture, jewelry, and the marital residence and that the Plaintiff did not seek a discharge of his obligation to turnover property, which he previously agreed belonged to his former wife. This property and cash had a value which the Defendant had previously estimated to be in excess of $370,000. There is, and has been, a heated controversy regarding the Plaintiff's obligation relating to the auto parts business, Ardiyos Corporation.

During their marriage, the parties established and developed a substantial auto parts business, which was located upon land they owned jointly, but agreed should be treated as part of the business for purposes of the settlement. The agreement and modification provided for the business to be appraised, listed, and sold. They also provided for the payment of $600 per week to the Defendant as an advance on the sale proceeds from the business and the maintenance of health insurance for the Defendant and life insurance on the Plaintiff, a policy upon which the wife was a one-half beneficiary, until the business was sold. The minimum sales price of the business, provided in the agreement and modification, was $600,000. It was contemplated and provided that the wife would remain an employee of the company and receive her full salary for approximately three months after the dissolution of their marriage, while she completed her college education. There is no dispute that this salary was paid. The Plaintiff continued to operate the auto parts business until he sought the protection of this Court and filed this adversary complaint seeking a determination that certain provisions of the settlement agreement are not in the nature of alimony, support, or maintenance, but are distributions of property and as such are dischargeable under Section 523(a)(5)(B) of the Bankruptcy Code.

Prior to the institution of the Plaintiff's voluntary bankruptcy, the defendant had filed a motion for contempt in the State Court action to compel compliance with the settlement agreement and for the appointment of a receiver for the auto parts business. The husband agreed to the appointment of a receiver for the auto parts business, due to his disputes with his wife, but an order appointing a receiver was not entered by the State Court until the day after the petition was filed. That State Court order was determined void and of no effect due the Defendant's violation of the automatic stay by this Court's Order Granting Emergency Motion, dated October 14, 1986.

Specifically, Plaintiff seeks a determination that his past and future obligation to pay advance sale proceeds on the eventual sale of the auto parts business is discharged. He does not dispute that his former wife is entitled to a one-half interest in the business when it is eventually sold. In fact, the Plaintiff and his state court lawyer testified at trial that they offered to give the entire auto parts business to his former wife prior to filing his voluntary Chapter 7 petition. He further testified that the business could not be sold for the minimum price of $600,000 and he did not wish to continue paying advance sale proceeds and working in the business until it was sold for a price acceptable to the Defendant.

The Plaintiff also seeks a determination that the obligations to provide health insurance for his former wife and insurance on his life, until the business is sold, are dischargeable.

The issues to be resolved by the Court are: (1) Whether the obligations under the agreement and modification thereto to pay advance sale proceeds on the sale of the business, to provide health insurance and continue the Plaintiff's life insurance naming the wife as an one-half beneficiary rep-

resent a disbursement of property between the parties or were intended as alimony, maintenance and support; (2) whether such obligations are dischargeable by the Plaintiff; (3) whether this Court should abstain; (4) whether Ardiyos Corporation was subject to the Court's jurisdiction on the date of filing; and, (5) whether the petition should be dismissed pursuant to 11 U.S.C. § 727.

The settlement agreement provides:

7. ALIMONY. Other than herein contained, no claim for alimony, temporary or permanent, or rehabilitative shall be made by the Wife of the Husband or the Husband of the Wife. This Agreement shall constitute a full release and waiver of all claims as to alimony.

No alimony of any kind other than as herein provided shall be paid to either party. The one-half (½) interest due the Wife upon the sale of the marital assets shall be her sole alimony. Ardiyos Corp., shall continue to employ the Wife until the marital residence is sold or May 1, 1986, whichever comes first. The Wife's salary and compensation shall remained [sic] unchanged. From the date of this Agreement the Wife shall no longer have the power to borrow money from any source whatsoever in the name of Ardiyos Corp. The Husband shall continue as president and manager of Ardiyos Corporation with all powers therein requisite.

\* \* \* \* \* \*

9. BANKRUPTCY. The obligations of this Agreement shall not be subject to discharged [sic] in bankruptcy.

The March 7, 1986, Modification of Child Custody and Property Settlement Agreement, which dealt only with the disposition of the auto parts business, provided:

Paragraph Two (2). Division of Property, (b) Personal Property. I. Ardiyos Corporation, dated January 24, 1986 and incorporated in the Final Judgment Dissolving Marriage, dated January 30, 1986, shall read as follows:

"During the years of the marriage the parties built a substantial automotive parts business known as Ardiyos Corporation, also d/b/a General Auto Parts Distributors. The stock for the corporation is equally owned by the parties. As to Ardiyos Corporation, the parties agree as follows: The land upon which the business is located shall be construed as a part of the business even though the Deed for the land is in the name of the Husband/Wife. The business shall be appraised by a licensed appraiser, to be selected by the wife, as soon as possible, but in no event later than thirty (30) days from the date of this Agreement. The cost of the appraisal shall be paid by Ardiyos Corporation. The listing agreement, currently in effect shall be modified to reflect the precise sale price determined by the appraisal. In all events the minimum purchase/sale price shall be Six Hundred Thousand ($600,000.00) Dollars. The net proceeds of the sale shall be evenly divided between the parties, subject to all other terms and conditions of this agreement. In the event the business is not sold prior to May 1, 1986, the husband shall pay to the wife as an advance on the sale proceeds the sum of Six Hundred ($600.00) Dollars per week. In the event the business is not sold at the appraised price or any other price in excess of Six Hundred Thousand ($600,-000.00) Dollars, within one (1) year from May 1, 1986 the husband or wife shall have the absolute right to purchase the others [sic] share for the fixed price of Three Hundred Thousand ($300,000.00) Dollars, payable Six Hundred ($600.00) per week with no interest. Said sum may be prepaid at any time. In no event may either party sell their undivided interest to any third party without express consent of the other."

The Plaintiff maintains that the obligations to pay advance sale proceeds and maintain the health and life insurance until the business was sold were intended to equitably distribute the property of the parties. He asserts that they were not intended as alimony, maintenance and sup-

port and that these obligations are dischargeable.

■ Paragraph 9 of the agreement will be given no effect because it is unenforceable. An agreement to waive the benefit of a discharge in bankruptcy is wholly void, as against public policy. *In re Kriger*, 2 B.R. 19, 23 (Bkrtcy.Ore.1979); *Fallick v. Kehr*, 369 F.2d 899, 906 (2d Cir.1966); *In re Weitzen*, 3 F.Supp. 698 (S.D.N.Y.1933). Therefore, the Court must look beyond paragraph 9 of the Settlement Agreement to determine whether the obligations are dischargeable.

The Defendant and her counsel urged the Court to focus on the several references to "alimony" and "sole alimony" in paragraph 7 of the settlement agreement and to determine that the parties agreed to a property settlement in connection with alimony, maintenance or support and the husband's obligations are, thus, not dischargeable under the Sixth Circuit's opinion in *In re Robert F. Singer*, 787 F.2d 1033 (6th Cir. 1986).

■ It is clear that the Child Custody and Property Settlement Agreement cover separately numbered and designated subjects, i.e. "Division of Property", "Child Support", and "Alimony". The Court has carefully reviewed them, and all other provisions of the agreement, although, labels and recitations of alimony and property settlement placed by the parties upon types of obligations and found in settlement agreements, are not necessarily determinative of the nature of such awards in a bankruptcy context. *In re Froman* 43 B.R. 609 (Bkrtcy.S.D.Fla.1984); *Matter of Bailey*, 20 B.R. 906 (Bkrtcy.W.D.Wis.1982); *In re Warner*, 5 B.R. 434 (Bkrtcy.D.Utah, 1980); *In re Carrigg*, 14 B.R. 658 (Bkrtcy. D.S.C.1981); *In re Ingram*, 5 B.R. 232 (Bkrtcy.N.D.Ga.1980).

■ Paragraph 7, *Alimony,* of the settlement agreement provides that both parties expressly waived their rights to claim temporary, permanent or relabilitative alimony, except for the wife's one-half interest in the sale of the marital assets. No definition of "marital asset" is included in the agreement. However, it is undisputed that all property owned by the parties during the marriage has been divided, except for the sale of the auto parts business and there is no dispute that the defendant will be entitled to one-half of the proceeds from its sale. This paragraph also contains provisions, such as the wife's continued employment until May 1, 1986, which do not relate to either alimony or a property settlement. Nevertheless, the Court is satisfied that these provisions, to the extent they are obligations of the husband, have been fulfilled.

The Court has also carefully reviewed the evidence and testimony and considered the factors used by other courts where the references to alimony or property settlement were not so clear, in determining whether or not an obligation provided for in a divorce decree was dischargeable. These factors have been identified as:

(1) Whether the obligation under consideration is subject to contingencies such as death or remarriage;

(2) Whether the payment was fashioned in order to balance disparate incomes of the parties;

(3) Whether the obligation is payable in installments or in a lump sum;

(4) Whether there are minor children involved in the marriage requiring support;

(5) The respective physical health of the spouse, and the level of education and, last;

(6) Whether, in fact, there was need for support at the time of the circumstances of the particular case.

*Matter of Basile*, 44 B.R. 221 (Bkrtcy.M.D. Fla.1984); and *Matter of MacKenzie*, 57 B.R. 107 (Bkrtcy.M.D.Fla.1985).

The sale of the auto parts business, and obligations tied to it, were not subject to the wife's remarriage or the death of either party. In fact, the Defendant advanced funds from the company before the settlement agreement was signed to a business in California, of which her current husband was the President. She announced her intention to remarry prior to the execution of the agreement and quickly remarried after

her marriage to the Plaintiff was dissolved. This did not affect the Plaintiff's obligations to her under the agreement. The only contingency which did change the Plaintiff's obligations was the sale of the business. This causes the Court to determine the obligations are in the nature of a distribution of property.

The agreement was not intended to balance the incomes of the parties. At the time the settlement agreement was executed, the parties were receiving similar salaries from the auto parts business and the defendant continued to receive her salary, after the divorce, until she graduated from college and moved to California to reside with her present husband.

The bulk of the proceeds from the business were to be distributed when it was sold. Since the parties stipulated that either could buy out the other's interest and the business could not be sold to a third party without the express consent of the other, the defendant could not have expected that she would receive these payments, indefinitely or over a prolonged period, in installments.

The Defendant did not require support for the minor child. As stated above, the Plaintiff assumed and has provided the sole support of the only minor child. It was also undisputed that the Defendant, 44 years old, is in good health, has business experience and recently completed her college education.

Despite the defendant's urging that she required the $600 per week "advance on the sale proceeds" payments as a "bridge" or temporary alimony until the business could be sold, there was no showing that she actually needed these payments for her maintenance or support after her salary was ended in May 1986 and after she had remarried. She had already received, by her own admission, over $370,000 in cash and property pursuant to the settlement agreement, exclusive of her right to receive a one-half interest in the auto parts business. There was no evidence that the parties intended, or the wife required, a larger "bridge" to her next marriage, which occurred in a matter of a few months and which was foreseeable when the agreement was signed.

The facts in the case at bar are clearly distinguishable from those presented in the case relied upon by Defendant, *In re Singer, supra,* where the wife was 60 years old, had not worked outside the home during their eight year marriage, was clearly in need of support, and where the periodic payments had the effect of providing necessary, reasonable support. Considering their respective positions and needs, it would have been unreasonable for this Plaintiff to pay $600 per week to his former wife, as alimony, until the business was sold.

This Court finds the facts at bar to be much closer to those found in *Matter of Rachmiel,* 19 B.R. 721 (Bkrtcy.M.D.Fla. 1982) where the husband had agreed to pay his spouse one-half the value of his 50% interest in a business in 96 monthly installments. That Court concluded that the obligation was in the nature of a property settlement and thus dischargeable. That same court reached a similar conclusion in another factually similar case, *Matter of Wiser,* 22 B.R. 381 (Bkrtcy.M.D.Fla.1982). *See also, In re Hall,* 40 B.R. 204 (Bkrtcy. M.D.Fla.1984). Applying these cases and the six factors discussed above to the instant facts this Court concludes that the remaining obligations of the Plaintiff represented a property settlement and are dischargeable.

■ The claims brought by Defendant in her counterclaim are without merit. The Defendant, in her answer, admitted that this Court has subject matter jurisdiction over the issues raised by the complaint, yet Count I of her counterclaim urges this Court to return the complaint to the State Court for enforcement and disposition of the settlement agreement. This Court has interpreted this count of the counterclaim as a motion for abstention. Although the legislative history of Section 523 made it clear that bankruptcy law, not state law, controls the interpretations of the section, this Court is not willing to, or required to, sit as a super divorce court. *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th

Cir.1983). It is not necessary for this Court to reexamine the disputes which led to the non-contested divorce between these parties, yet it must review the settlement agreement, the modification, and certain factors surrounding them to determine whether the plaintiff is entitled to the benefit of the Bankruptcy Code's "fresh start". *In re Cohen*, 47 B.R. 871 (Bkrtcy.S.D.Fla. 1985). For these reasons, Count I of the counterclaim is dismissed with prejudice, and to the extent it is more properly styled a motion for abstention, it is denied.

Prior to the trial on the adversary complaint and counterclaim, the plaintiff had filed an emergency motion for stay to prevent his former wife, the defendant herein, from proceeding in state court regarding his interest in the auto parts business and for other relief. This Court found that a state court order entered one day after the plaintiff had filed his voluntary petition affected property of the estate; namely his 50% equity interest in the auto parts business and this Court's October 14, 1986 Order Granting Emergency Motion from Stay determined that the state court's post-petition order was void and of no effect upon the plaintiff or his property. No appeal or motion for leave to appeal that order has been filed by the defendant. The plaintiff's interest in the auto parts business is now being protected by the Interim Trustee, who may conclude, as the debtor and his former wife did, that a receiver should be appointed, or the Interim Trustee may agree with the defendant that the business should be liquidated or sold. Although a separate bankruptcy petition has not been filed by Ardiyos Corporation, this Court finds that its prior Order Granting Emergency Motion for Relief requires that Count II of the Counterclaim, which seeks a determination that the State Court's post-petition order appointing a receiver for the auto parts business is not subject to the automatic stay, must be dismissed with prejudice.

■ Count III of the counterclaim alleges that the plaintiff has not complied with Section 727 (Discharge) and that the main bankruptcy case must be terminated and rendered void ab initio. This counterclaim did not allege specific facts, which would justify a determination that all of the plaintiff's debts should not be discharged and no testimony or evidence was presented at the trial, which would arguably support such a ruling. At trial, the Defendant's counsel simply questioned the debtor's good faith in filing his Chapter 7 petition on the eve of a continued hearing in the state court after the Plaintiff had also recommended that a receiver be appointed to operate and preserve the auto parts business.

Chapter 7 of the Bankruptcy Code contains no requirement that voluntary petitions be filed in good faith. The evolution of "good faith" as a threshold requirement to file a bankruptcy petition is framed in *Victory Construction, Inc.*, 9 B.R. 549 (Bkrtcy.C.D.Cal.1981) and is fully analyzed in *The Good Faith Principle in the Bankruptcy Code: A Case Study*, 38 Bus.Law. 1785 (1983). *See In re Lotus Investments, Inc.*, 16 B.R. 592 (Bkrtcy.S.D.Fla.1981). Although the bulk of the cases dealing with the issue of a petitioner's good faith have arisen under Chapter 11 or Chapter 13 and not under Chapter 7, this Court has examined the Plaintiff's good faith in response to the Defendant's allegations.

Having distributed over $370,000 in cash, jewelry, real property and other assets, having employed his former wife for three months while she completed college, and after having offered his former wife the entire auto parts business—not just one-half of the proceeds, the Plaintiff filed this petition to have his obligations to continue paying advance sale proceeds and his obligation to provide insurance benefits until the business could be sold discharged because he did not believe the business could be sold at the minimum agreed price. The Plaintiff's effort to obtain a "fresh start" free from any further obligations to work at the auto parts business or to pay his former wife advance sale proceeds for an indefinite period was a good faith purpose and the Defendant has failed to prove otherwise. Therefore, Count III of the Counterclaim is dismissed with prejudice.

A judgment will be entered in accordance with the Findings of Fact and Conclusions of Law.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is hereby

ORDERED AND ADJUDGED that Final Judgment is hereby entered in favor of plaintiff, Moises Markizer, and against defendant, Zoraida Markizer Economopoulos, and Moises Markizer's obligations under the Child Custody and Property Settlement Agreement entered into on January 24, 1986, and the March 7, 1986, modification thereto to pay $600 per week as an advance on the sale proceeds of Ardiyos Corporation, to maintain health insurance on Zoraida Markizer Economopoulos and to maintain a life insurance policy, upon which Zoraida Markizer Economopoulos is a one-half beneficiary, are not in the nature of alimony, maintenance and support, but are distributions of property and as such are dischargeable pursuant to Section 523(a)(5)(B) of the Bankruptcy Code. The three counts of the Defendant's counterclaims are dismissed with prejudice and, to the extent Count I is more properly styled a motion for abstention, it is denied.