### In re Joseph KODEL, Debtor.

### Joseph KODEL, Plaintiff,

### v.

### Miriam KODEL, Defendant.

**Bankruptcy No. 89–12881–BKC–SMW.**
**Adv. No. 89–0345–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 25, 1989.

Arthur Rice, Miami, Fla., for plaintiff.

Steven Brownstein, Miami, Fla., for defendant.

David R. Softness.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on before the Court upon a Complaint to Determine Dischargeability of a debt under 11 U.S.C. § 523(a)(5), and the Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, it does hereby make the following findings of fact and conclusions of law:

Plaintiff, JOSEPH KODEL and Defendant, MIRIAM KODEL were married on June 30, 1952. After thirty-four (34) years of marriage, the Plaintiff and Defendant were divorced on August 27, 1986. In contemplation of the divorce, the parties entered into a Property Settlement Agreement dated February 1, 1986. This Property Settlement Agreement was incorporated into the Final Judgment dissolving the marriage.

In September of 1988, a General Master in the State Court proceeding entered a Report and Recommendation, finding the

Plaintiff/Husband delinquent in payments under the Agreement and otherwise owing the Wife a total of $114,372.34. That finding was adopted by the Circuit Court and a Judgment was entered on or about October 20, 1988 for that sum. The Plaintiff maintains that the liability under that Judgment arises out of the obligations incurred under the Property Settlement Agreement.

The Plaintiff asserts that the obligations incurred under the Property Settlement Agreement and the subsequent Judgment, although categorized as alimony, are dischargeable under the Bankruptcy Code. Plaintiff lists in his Complaint, eleven (11) separate and distinct obligations due to the Defendant under the Property Settlement Agreement and contends that each and every category is dischargeable. Those categories are as follows:

1. Conveyance of Plaintiff's interest in the marital home to the Wife.

2. Assumption by Husband of a mortgage that existed on the marital home or an equal sum for a mortgage on a residence occupied by the Wife, including principal, interest, taxes, insurance payments, all repairs and all maintenance until MIRIAM KODEL remarries or dies.

3. A transfer to Defendant of all of Plaintiff's interest in all personal property that was contained within the marital residence.

4. Payment by Plaintiff to Defendant of the sum of $3,500.00 per month until Defendant's death or remarriage.

5. Payment of $750.00 per month for 180 consecutive months in exchange for Wife's relinquishment of any right, title or interest in the husband's business or pension/profit sharing plan.

6. The purchase of an automobile not to exceed the cost of $20,000.00.

7. The maintenance of major medical/hospitalization insurance for MIRIAM KODEL until death or remarriage plus financial responsibility for MIRIAM KODEL's uncovered medical and/or dental expenses, including prescriptions plus the first $150.00 per month of psychological or psychiatric expenses plus one-half of the monthly psychological or pscyhiatric expenses exceeding $150.00 per month.

8. The cost of a $250,000.00 life insurance policy designating MIRIAM KODEL as the irrevocable beneficiary.

9. The payment of all of MIRIAM KODEL's automobile expenses including but not limited to gas, oil, repairs, license, tags, etc., until her death or remarriage plus an additional $1,500.00 per year as a contribution towards MIRIAM KODEL's automobile insurance.

10. The assumption of any assessed tax deficiencies preceding the date of the Agreement.

11. The payment of MIRIAM KODEL's "court costs and suit monies (exclusive of attorney's fees)" and all of MIRIAM KODEL's attorney's fees.

The Defendant answered the Complaint acknowledging the Property Settlement Agreement as well as the Report and Recommendations of the General Master and Order on Exceptions to General Master's Report. In addition, Defendant asserted two (2) Affirmative Defenses, first, that the obligations are in the nature of alimony, maintenance and support and are non-dischargeable under 11 U.S.C. § 523(a)(5) and secondly, that Plaintiff waived his right and/or was estopped from asserting dischargeability of the obligations as the Husband agreed in the Property Settlement Agreement that the rights and obligations thereunder are not dischargeable in Bankruptcy.[1]

The Defendant has stipulated that the following are in the nature of equitable distribution and to the extent that the obligation or obligations remain outstanding are dischargeable:

1. Conveyance of Husband's interest in the marital home.

2. Transfer of Plaintiff's interest in all personal property within the marital residence to Defendant.

---

1. Defendant abandoned the second affirmative defense in light of this Court's prior ruling in *In re: Markizer* 66 B.R. 1014 that such clause is void as against public policy.

3. Payment by Husband to Wife of $750.00 per month for 180 consecutive months.

4. Purchase of automobile for Wife by Husband.

The Defendant/Wife, at the time of dissolution, was fifty-four (54) years old. The Husband during a substantial portion of the marriage owned and operated his own business and for approximately the last eighteen (18) years of the marriage, owned and operated a company known as G & M Auto Supply. During the initial years of the marriage, the Defendant assisted the Plaintiff in the operation of the business but, at the request and with the consent of the Husband, has not worked in the last twenty (20) years. In addition, the Defendant/Wife, has suffered emotionally as a result of the deterioration and termination of the marriage.

The Wife has no independent source of income other than nominal interest from certain bonds, and income, if any, from a warehouse jointly owned by the parties which ownership was divided equally under the Property Settlement Agreement. The Husband retained one-half ownership interest in the warehouse, the entire business and the income stream therefrom, as well as his equity in a profit sharing/pension plan.

The Husband primarily focused his argument on the Property Settlement Agreement in two (2) areas. First, he asserts that the $3,500.00 monthly payment was in fact not alimony, though labeled as alimony in the Property Settlement Agreement and identified therein as "support and maintenance". The Husband contends this provision was an equitable distribution for the Wife's interest in the Husband's business, G & M Auto Supply. In support of this contention, the Husband introduced his income tax returns for the years 1984 and 1985 to establish that his net income for those years was between $70,000.00 and $80,000.00 per year, the majority eminating from G & M Auto Supply. He further asserts that the $3,500.00 per month payment, taken together with the other payments due under the Property Settlement

Agreement (approximately $1,500.00 per month) could not be the basis of alimony as such payments would encompass a substantial portion of the Husband's net income. The Husband further argues that since the $3,500.00 would come primarily from income generated from the business, the $3,500.00 by its nature must be deemed equitable distribution and, therefore, dischargeable.

The Husband also contends that the requirement to pay the existing mortgage and other expenses on any residence occupied by the Wife until the Wife remarries or dies, cannot be deemed in the nature of alimony, maintenance or support in that it was directed to be paid out of the real estate account set up to handle the revenues of the operation of the co-owned warehouse. The Court notes that this provision reflects that "in the event that there are no funds in the account, the Husband, or his estate, shall still be responsible for the aforementioned payments".

The Husband called as a witness Mr. Andrew Leinoff, counsel for the Wife in the dissolution proceeding and all post dissolution proceedings in the State Court. Mr. Leinoff testified in great detail about the nature and purpose of the Property Settlement Agreement, the extensive negotiations surrounding the Property Settlement Agreement and the basis on which the Settlement Agreement was entered. The Court finds that the testimony of Mr. Leinoff was detailed, precise, inciteful and of substantial assistance in outlining and explaining the intent of the Property Settlement Agreement. Mr. Leinoff reaffirmed that those items previously stipulated as equitable distribution payments were in fact intended to be so. He then explained the nature of the negotiations, the basis of payments to be made in accordance with cash flow of the parties, and the intent of the parties to assure that there would be monies provided MRS. KODEL for her support and maintenance.

In determining whether or not obligations are in the nature of alimony, support or maintenance, this Court is guided by various factors. The Eleventh Circuit in

*In Re: Harrell*, 754 F.2d, 902 at page 907 stated:

> We conclude that Congress intended that Bankruptcy Courts make only a simple inquiry into whether or not the obligation at issue is in the nature of support. This inquiry will usually take the form in deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement. Thus, there will be no necessity for a precise investigation of the spouse's circumstances to determine the appropriate level of need or support, it will not be relevant that the circumstances of the parties may have changed, e.g., the spouse's need may have been reduced at the time the Chapter 7 petition is filed. Thus, limited to its proper role, the Bankruptcy Court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible.

Based upon *Harrell*, it is not the province of this Court to determine the fairness of a settlement agreement, nor whether the settlement agreement impinges upon the economic viability of the party paying the obligations thereunder. This Court must simply determine whether the obligations in question were in the nature of support as opposed to being in the nature of a property settlement.

■ This Court has on numerous occasions been confronted with the issue of dischargeability or nondischargeability of obligations under a property settlement agreement, and/or Judgment of a State Trial Court. This Court has previously acknowledged that designation and labeling of obligations are not determinitive of the nature of such awards in a bankruptcy context. *In Re: Froman* 43 B.R. 609 (Bkrtcy.S.D.Fla.1984). The Court must look to other factors when references in a property settlement agreement are not sufficiently clear to determine whether an obligation was dischargeable. This Court has previously identified those factors as follows:

1. Whether the obligation under consideration is subject to contingencies such as death or remarriage.

2. Whether the payment was fashioned in order to balance disparate incomes of the parties.

3. Whether the obligation is payable in installments or in lump sum.

4. Whether there are minor children involved in a marriage requiring support.

5. The respective physical health of the spouse and the level of education.

6. Whether, in fact, there was need for support at the time of the circumstances of the particular case.

*In Re: Graves* 69 B.R. 626 (Bkrtcy.S.D.Fla. 1986), *In Re: Markizer* 66 B.R. 1014 (Bkrtcy.S.D.Fla.1986); *Matter of Basile*, 44 B.R. 221 (Bkrtcy.M.D.Fla.1984), *Matter of MacKenzie*, 57 B.R. 107 (Bkrtcy.M.D.Fla. 1985).

Upon review of the evidence and testimony of the witnesses, the Court finds that the following items are in the nature of support, maintenance or alimony and, therefore, not dischargeable:

1. Assumption of the mortgage payment on MRS. KODEL's home including principal, interest, taxes, insurance payments, all repairs and all maintenance until MIRIAM KODEL remarries or dies.

2. Payment by Plaintiff to MIRIAM KODEL of the sum of $3,500.00 per month until MIRIAM KODEL's death or remarriage.

3. The maintenance of major medical/hospitalization for MIRIAM KODEL until death or remarriage plus financial responsibility for MIRIAM KODEL's uncovered medical and/or dental expenses including prescriptions plus the first $150.00 per month of psychological or psychiatric expenses plus one-half of the monthly psychological or psychiatric expenses exceeding $150.00 per month.

4. The cost of a $250,000.00 life insurance policy designating MIRIAM KODEL as an irrevocable beneficiary.

5. The payment of all of MIRIAM KODEL's automobile expenses, including but

not limited to gas, oil, repairs, license, tags, etc., incurred by her until her death or remarriage, whichever occurs first plus the contribution of $1,500.00 per year on the Wife's automobile insurance.

6. The assumption of any assessed tax deficiencies preceding the date of the Property Settlement Agreement.

The Court notes that the intent of the parties was clearly set out by the testimony of Mr. Leinoff. Mr. Leinoff's testimony, though scrutinized on examination, was not rebutted by any witness, including the Plaintiff himself. The Court further finds that the above-referenced obligations fit within the criteria of *Markizer and Graves*. The payments and obligations in question are not lump sum, they cease upon Wife's death or remarriage and they are consistent with the Wife's need for support at the time of the case, especially in light of the Wife's fragile health and lack of working experience over the last twenty (20) years.

The Court specifically rejects the Plaintiff's argument that the $3,500.00 monthly payment was not alimony. Paragraph 14(F) of the Property Settlement Agreement specifically reflects that the $750.00 per month for 180 consecutive months which has been stipulated as dischargeable was the consideration for the Wife's relinquishment of any rights, title or interest in the Husband's business or pension/profit sharing plan. Secondly, the fact that payments would come from the income of a business does not in any way demonstrate that the payments are therefore some type of equitable distribution relating to that business. Finally, the Court cannot accept Plaintiff's argument that all of the designated obligations were in the nature of equitable distribution and not in the nature of support, maintenance and alimony. The Court would be hardpressed to construe the document as not providing funds in the nature of alimony, support or maintenance to a Wife of thirty-four years with nominal income and no

2. At closing argument Plaintiff conceded that a portion of the $3,500.00 payment should be

expectation of meaningful employment in the future.[2]

Plaintiff's argument that the mortgage and house maintenance payments cannot be deemed alimony is also unfounded. It appears that the provision benefited the Plaintiff in that those payments, for purposes of accounting, were expenses, thereby equalizing net disbursements from that fund after deduction of expenses. Also, the responsibility of paying the mortgage and maintenance on the house owned by MRS. KODEL was not limited to strictly funds from the warehouse operating account MR. KODEL was obligated to pay the same even if there were insufficient funds in the account to do so.

The parties have agreed that the obligations reflected in the Report and Recommendations of General Master and the Order on Exceptions to that General Master's Report dated October 20, 1988 arise out of obligations in the Property Settlement Agreement. To the extent that the obligations arise out of matters found to be dischargeable in accordance with this Findings of Fact and Conclusion of Law, the same shall be discharged. Those arising out of nondischargeable obligations under the Property Settlement Agreement shall be deemed nondischargeable.

Plaintiff, by pleading, requested this Court to determine the dischargeability of the obligation to pay fees and costs as reflected in the Property Settlement Agreement. Neither the Plaintiff nor the Defendant presented any testimony as to the nature and amount of those fees and the Court makes no ruling thereon.

A Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is hereby

deemed alimony.

734

ORDERED AND ADJUDGED that under that certain Property Settlement Agreement dated February 1, 1986 between MIRIAM KODEL and JOSEPH KODEL adopted by Final Judgment dated August 27, 1986, the following obligations are deemed to be dischargeable under 523(a)(5)(B) of the Bankruptcy Code:

1. Conveyance of Husband's interest in the marital home.

2. Transfer of Plaintiff's interest in all personal property within the marital residence to Defendant.

3. Payment by Husband to Wife of $750.00 per month for 180 consecutive months.

4. Purchase of automobile for Wife by Husband.

The following obligations under that Property Settlement Agreement and Order adopting the same are nondischargeable pursuant to 523(a)(5):

5. Assumption of the mortgage payment on MRS. KODEL's home including principal, interest, taxes, insurance payments, all repairs and all maintenance until MIRIAM KODEL remarries or dies.

6. Payment by Plaintiff to MIRIAM KODEL of the sum of $3,500.00 per month until MIRIAM KODEL's death or remarriage.

7. The maintenance of major medical/hospitalization for MIRIAM KODEL until death or remarriage plus financial responsibility for MIRIAM KODEL's uncovered medical and/or dental expenses including prescriptions plus the first $150.00 per month of psychological or psychiatric expenses plus one-half of the monthly psychological or psychiatric expenses exceeding $150.00 per month.

8. The cost of a $250,000.00 life insurance policy designating MIRIAM KODEL as an irrevocable beneficiary.

9. The payment of all of MIRIAM KODEL's automobile expenses, including but not limited to gas, oil, repairs, license, tags, etc., incurred by her until her death or remarriage, whichever occurs first plus the contribution of $1,500.00 per year on the Wife's automobile insurance.

10. The assumption of any assessed tax deficiencies preceding the date of the Property Settlement Agreement.

The liabilities in that certain General Master's Report and Recommendations and Order on Exceptions dated August 27, 1986 arise out of the Property Settlement Agreement obligations previously recited. The debts shall be dischargeable or nondischargeable in accordance with the findings in this Final Judgment.