**In re John Allen SEABLOM, Jr. and Karen Anne Seablom, Debtors.**

**Carole J. SEABLOM, Plaintiff,**

**v.**

**John Allen SEABLOM, Jr. and Karen Anne Seablom, Defendants.**

**John Allen SEABLOM, Jr., and Karen Anne Seablom, Plaintiffs,**

**v.**

**Carole J. SEABLOM, Defendant.**

Bankruptcy No. 83–05582.

Adv. Nos. 84–7066, 84–7068.

United States Bankruptcy Court, D. North Dakota.

Oct. 4, 1984.

Shirley Dvorak, Grand Forks, N.D., for Carole J. Seablom.

Scott Griffeth, West Fargo, N.D., for John & Karen Seablom.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

This case is the continuation of a marital dispute between the parties which resulted in their divorce, an appeal to the North Dakota Supreme Court and finally the commencement of bankruptcy adversary actions against each other. The Debtor, John Allen Seablom, Jr. and his former wife, Carole J. Seablom, were divorced in May 1982 on the ground of irreconcilable differences. John and his present wife filed a petition under Chapter 7 of the Bankruptcy Code on November 15, 1983, and in connection therewith claimed as exempt two (2) quarters of real estate described as:

> NE ¼ of Section Two (2), Township 147N of Range 51W, Traill County, North Dakota.
>
> SW ¼ of Section Thirty-Two (32), Township 148N of Range 50W, Traill County, North Dakota.

Carole filed a Proof of Claim against the estate in the amount of $41,537.00 for the balance remaining due her under the terms of the divorce decree which sum she claims is secured by the terms of the decree itself as well as her continuing ownership of an undivided one-half interest in the two quarters. She commenced an adversary action on May 15, 1984, claiming, that by virtue of a joint tenancy ownership, she has an undivided one-half interest in the two quarters, as well as the crops growing thereon, rendering her a secured creditor for all sums still due under the divorce decree. By her complaint, she has also objected to discharge pursuant to section 727(a)(2) and (3). On May 16, 1984, John filed his own adversary complaint against Carole alleging that any sums due her under the divorce decree were in the nature of a property settlement making them fully dischargeable in bankruptcy. He further denies that Carole has any security interest in the two quarters. The cases were consolidated, and trial was held on September 5, 1984. From the evidence presented, the Court finds the relevant facts to be as follows:

### FINDINGS OF FACT

**1.**

John and Carole's twenty-two-year marriage resulted in a divorce entered by the North Dakota State District Court for Traill County, North Dakota, in May 1982. During the marriage, they acquired as joint

tenants two quarters of farmland in Traill County which they had farmed along with other acreage. In connection with the farming operation, they borrowed sums from Federal Land Bank, FHA and First State Bank of Buxton. Federal Land Bank holds a first mortgage on the two quarters with its indebtedness as of July 1984 standing at $123,997.00 plus interest. FHA holds a second mortgage on the same land with an indebtedness as of July 1984 in the sum of $80,684.00 plus interest. The Bank holds a security interest in all farm machinery and vehicles plus a third mortgage in the subject quarters. In addition, the Bank received crop mortgages in 1982, 1983 and 1984. The present indebtedness to the Bank stands at $112,000.00 plus interest. The loans and mortgages with Federal Land Bank and FHA were signed by both John and Carole as joint tenants, but the mortgage to the Bank was signed by John only.

The parties in May 1982 obtained a judgment of divorce which incorporated the parties' settlement stipulation. As material to this discussion, the agreement provided:

"9. The Plaintiff [John] shall pay to the Defendant the sum of Twenty-five Thousand Dollars ($25,000.00) which is due in 60 days of the date of judgment.

10. That the Plaintiff shall pay unto the Defendant as and for alimony the further sum of $14,400.00 payable in 36 consecutive monthly installments at the rate of $400.00 per month commencing on the 15th day of May, 1982, and payable on the 15th day of the month thereafter until paid in full. These payments shall not be terminated due to the death or remarriage of either party. The Plaintiff may prepay all or part of this amount at any time.

11. Upon payment of the $25,000.00 amount referred to above, each party shall execute and deliver to the other such instruments of title or conveyance which may be necessary to effect the foregoing division of property."

The division of property provided for in the decree specifically awarded John as his exclusive property among other things the two quarters of land in Traill County and all crops on hand or growing. The decree also made him solely responsible for the outstanding indebtedness to Federal Land Bank, FHA, and the First State Bank of Buxton, among others. Carole was awarded the family residence free of encumbrance, household goods and an automobile.

Subsequent to the entry of the decree of divorce, Carole sought to enforce the payments required by paragraphs 9 and 10 of the decree and when unsuccessful in State District Court, she filed an appeal with the North Dakota Supreme Court which resulted in a decision being handed down by that Court in April of 1984. The Supreme Court construed paragraph 10 of the decree and held that when read in context of the decree it indicated a property division as opposed to alimony despite the use of the term "alimony". The Court did not construe paragraph 9 except to note that both Carole and John agreed it was a property division. *See Seablom v. Seablom*, 348 N.W.2d 920 (N.D.1984).

At trial of the instant adversary, John acknowledged that both quarters remain in both names which confirms the opinion of FHA to the effect that the property is owned by the parties as joint tenants. Carole stated that she intended to relinquish her interest in the crops but never intended to give up her interest in the land itself until she received the payment under the terms of the decree.

Carole continues to reside in the family home in Buxton which she testified has been mortgaged for her living expenses and school tuition. She apparently has no substantial source of income and has returned to college.

2.

John and his present wife filed their Chapter 7 petition on November 15, 1983, along with their required schedules. Schedules B-1, B-2 and B-4 were amended in February of 1984 with Schedule B-2 and B-3 being further amended in March of 1984. The original Schedules failed to reveal the existence of 6,000 bushels of

wheat in storage, the existence of crop liens, the existence of three farm leases, the extent of John's 1983 income and omitted a full listing of creditors holding security. The only testimony regarding disposition of assets was that of Carole who said she had never received any payment from or an accounting of crops grown on the two quarters. John testified that all grain listed was subject to the Bank's security interest and all money received on the sale of grain has gone to the Bank. At trial, he further explained that he had no intent to omit anything and thought that everything had been included on the original questionnaire forms sent to him by his attorney and which he filled out and returned. Upon cross-examination by Carole's attorney, John did not appear to be evasive but stated that when the original schedules were filed he did not have available his 1983 W–2 forms and further that at that time there were no crops on hand that were not pledged. A review of the later amendments reveals that they corrected the earlier omissions and went into some detail regarding the nature of the items originally omitted.

## CONCLUSIONS OF LAW

As framed by the pleadings, there are three issues to be resolved. The first two bear on the nature of the divorce decree—whether the payments required are non-dischargeable as alimony under section 523(a)(5) and whether Carole is possessed of a non-dischargeable lien against the real property as well as the crops grown thereon. The third issue is whether the facts as established require denial of discharge under section 727.

### 1.

 The section 727 claim will be addressed first. Carole argues in this regard that a pattern of concealment has been established principally because of the omissions from the original schedules. Denial of discharge under section 727(a)(4)(A) of the Code requires that the oath as to the schedules was knowingly and fraudulently made and related to a material fact.

Where a false statement in a statement of affairs or schedule is due to mistake or inadvertence, courts generally do not deny the debtor a discharge. *In re Butler,* 38 B.R. 884 (Bankr.D.Kan.1984). The burden is on the party seeking denial to prove each element by preponderance of the evidence. *In re Mascolo,* 505 F.2d 274, 276 (1st Cir. 1974); *In re Kott,* 32 B.R. 252 (Bankr.E.D. Va.1983). The purpose of section 727(a)(4)(A) is to insure that a debtor supplies accurate, complete and dependable information—information that can be relied upon by anyone having reason to look at the statement or schedules. It is possible, and it is oftentimes the case, that the statement of affairs or schedules filed with the petition are incomplete for one reason or another without any intent on the part of the debtor for them to be so. It is not the purpose of section 727 to deny a discharge to a debtor merely because information is missing or inaccurate. The information must have been omitted or altered with the specific purpose of working a fraud. The facts in the instant case indicate at best that John was either careless or that he did not fully understand his attorney's instructions relevant to the information which must be supplied in order to complete the statement of affairs and schedules. He and his wife, on two separate occasions, filed amendments which did correct the originals and which subsequently provided thorough and accurate information. The Court had an opportunity to observe John during his testimony on the omitted items, and he was not evasive nor did he possess the demeanor of one who is cavalier in his obligation to provide correct and complete information. Considering all of the facts and circumstances, the Court concludes that the evidence has failed to provide a basis for denying the debtors a discharge.

### 2.

 Carole takes the position that the payments of $400.00 per month for 36 months, as specified by paragraph 10 of the divorce decree, constitute alimony and are therefore non-dischargeable under sec-

tion 523(a)(5) of the Code. Section 523(a)(5) excepts from discharge any debt owed to a spouse or former spouse for alimony to, maintenance for, or support of such spouse irrespective of whether or not the liability is designated as such. As this Court has previously noted in *In re Hillius Farms*, 38 B.R. 334 (Bankr.N.D.1984), whether an award in a divorce decree is actually alimony does not turn upon how the award was designated in the divorce decree itself. The bankruptcy court must look to all the circumstances surrounding the creation of the liability, not only how it was characterized in the decree. *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *In re Altavilla*, 40 B.R. 938 (Bankr.D.Mass.1984). Where the character of the liability is ambiguous or unclear, this Court in construing decree provisions has relied upon factors such as earning power of the spouses, educational levels, physical health, anticipated needs for support, factors contributing to the marriage dissolution, and whether the obligation terminates upon the spouse's remarriage or death. Carole argues that the award specified in paragraph 10 is just what it says—"alimony". She previously advanced this argument to the State District Court and to the North Dakota Supreme Court in her attempt to enforce the decree. Both the District Court and the Supreme Court determined that the provisions of paragraph 10 constituted a property settlement despite the use of the word "alimony". The North Dakota Supreme Court in its decision noted that the word alone is ambiguous requiring further consideration of what the parties' intent actually was. The court's determination that the provision indicated a property division was premised principally on the fact that the monthly payment specified did not terminate upon Carole's death or remarriage suggesting property settlement rather than spousal support. This Court in *In re Hillius Farms*, supra. also noted that a condition that payments cease upon death or remarriage of a spouse "would readily evidence that the obligation is in the nature of a support award".

Although as stated in *In re Williams*, supra., the question is one for federal bankruptcy law and the characterization placed on a divorce award by a state court is not binding; a bankruptcy court, nevertheless, should not ignore prior state court proceedings particularly where the very issue before the bankruptcy court has been considered by the supreme court of the state. In such instances, the bankruptcy court in making its decision should consider all evidence giving particular weight to prior state court decisions which bear on the issue. *In re Migliarese*, 38 B.R. 978 (Bankr.E.D.N.Y.1984). Indeed it would be presumptuous for this Court to ignore the North Dakota Supreme Court in this instance because that court, in reaching its decision, interpreted the provisions of paragraph 10 in precisely the same way that a bankruptcy court would have construed a similar provision. Generally, an obligation which does not terminate upon death or remarriage is viewed by bankruptcy courts as a property settlement regardless of how labeled. *In re Boyd-Leopard*, 40 B.R. 651, 655 (Bankr.D.S.C.1984).

For the foregoing reasons, this Court must find that the obligation to pay monthly payments of $400.00 is in the nature of a property settlement and is, therefore, dischargeable in bankruptcy.

### 3.

We next address the question of whether Carole retains a lien against the two quarters and whether that lien is avoidable by the Debtors. In this regard, several factors must be kept in mind. First of all, the facts are clear that Carole at all times was an owner in joint tenancy with John of the real estate in question and has never conveyed away that interest. By paragraph 3 of the decree, the two quarters were awarded to John as his exclusive property but, by paragraph 11, Carole was not required to make a conveyance to effect the property division until she had been paid $25,000.00 as specified in paragraph 9. John takes the position that whatever interest Carole may have had in the property is extinguished along with the

obligation to pay the $25,000.00. Both parties have previously conceded that the $25,-000.00 obligation is in the nature of a property settlement, but Carole argues that until payment, she retains a non-extinguishable lien in the two quarters including crops.

No where in the decree is Carole specifically granted a lien in the two quarters, but this Court believes, from the testimony and the totality of the decree itself, that this was the intent of the parties as well as the state court. John was awarded the two quarters, but that award was not to be consummated until Carole made the conveyance required by paragraph 11, an obligation she had *only* when she received $25,000.00. Thus, this Court believes the decree, in that it conditioned conveyance upon payment of the $25,000.00, operated to secure Carole's interest in the two quarters. This interest is entitled to the same protection as a purchase money mortgage. *In re Erwin,* 25 B.R. 363 (Bankr.D.Minn. 1982).

Recently this issue has been addressed by the Eighth Circuit Court of Appeals in the case of *In re Boyd,* 741 F.2d 1112 (1984). That case involved a situation where a divorce decree awarded the wife the homestead subject to a lien in favor of the husband in the sum of $7,000.00. The case found its way to the Minnesota District Court when the bankruptcy court allowed avoidance of the lien as a judicial lien under section 522(f)(1) of the Code. *In re Boyd,* 31 B.R. 591 (Bankr.D.Minn.1983). The District Court was affirmed by the appellate court which held that the requirements of avoidance under section 522(f)(1) were not met because the lien did not attach to an interest of the wife but "rather protects a pre-existing interest of [the husband] in the homestead that was created under Minnesota law prior to the marriage dissolution." In the instant case, we are not concerned with a homestead but this Court believes the principle is the same where for many years prior to the decree, the property was held by the parties as joint tenants. Joint tenancy interests, just as homestead interests, cannot be conveyed without the signatures of both owners.

Accordingly, the lien created by the divorce decree to protect Carole's right to payment did not attach to an interest of the estate but only protected a pre-existing property interest, an interest she held as a joint tenant irrespective of the decree. The lien is not avoidable under section 522(f)(1) because it did not attach to any interests of the Debtors in the property.

Regarding the crops grown upon the two quarters, no conveyance or other instrument of title was necessary to consummate the award to John. That award was complete upon entry of the divorce decree. Further, from Carole's testimony it appears she intended by the settlement stipulation to give up her interest in the crops regardless of payment. From this the Court believes that whatever interest Carole may have had in the crops was encompassed within her interest in the land itself—an interest established by the decree to be $25,000.00.

The Debtors have argued that regardless of whether a lien exists, it has no value. This Court did not allow evidence relative to the present market value of the property because it believes the value of Carole's interest was agreed upon by the parties in their settlement stipulation, and it was upon that stipulation that the divorce decree was entered. Concerning stipulated property settlements, the North Dakota Supreme Court has held that where a divorce is granted upon the parties' agreement of all matters, there is no reason for the trial court to hear evidence of property values. To do so, said the court, would render nugatory all efforts to make amicable out-of-court property settlements. *See Fleck v. Fleck,* 337 N.W.2d 786 (N.D.1983). Adopting this reasoning, it would be manifestly unfair for this Court to place a different value on Carole's interest where both parties originally agreed to a value and the State Court entered a decree based on that value. To alter that agreed-upon value would bring into question every other element agreed upon in the divorce decree since it was based upon a negotiated settlement between the parties which involved give and take on both sides. As noted by the district court in *In re Boyd, supra.,*

federal courts have generally abstained when faced with family law questions and the bankruptcy court cannot ignore the purpose of a divorce proceeding and the intent of the divorce court. This observation is particularly true when the divorce court attributed a value to a party's interest in property based upon the parties' own agreed stipulation of value.

For the foregoing reasons, this Court finds that Carole has a lien against the real estate in the sum of $25,000.00 which is not avoidable under section 522 of the Code.

This lien, however, does not extend to crops grown upon the land or proceeds thereof. The obligation to pay $25,000.00 was contingent only upon conveyance of the interest in the real estate itself. The divorce decree is quite clear that the crops on hand or growing became the absolute property of John and as such became the sole property of the estate.

No award for interest, attorney's fees or costs is allowed.

Accordingly, the automatic stay is hereby lifted to permit Carole to enforce her $25,000.00 lien against the two quarters.

IT IS SO ORDERED.