**In re Scott OSTERBERG, Debtor.**

**Julie STREICH, Plaintiff,**

v.

**Scott OSTERBERG, Defendant.**

**Bankruptcy No. 89–05155.**
**Adv. No. 89–7042.**

United States Bankruptcy Court, D. North Dakota.

Jan. 19, 1990.

John S. Steinberger, Kenmare, N.D., for defendant, debtor.

Parrell D. Grossman, Minot, N.D., for plaintiff.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding was commenced by Complaint filed June 7, 1989, by which the plaintiff, Julie Streich, seeks a determination that divorce decree provisions by which the defendant/Debtor, Scott Osterberg, would remain responsible for certain marital obligations are in the nature of alimony and support and thus nondischargeable under section 523(a)(5) of the United States Bankruptcy Code. Trial of the matter was held on January 10, 1990. In addition to evidence presented at trial, the parties submitted a stipulation of uncontested facts.

From the evidence presented at trial and the stipulation of facts the court makes the following findings of fact and conclusions of law:

### Findings of Fact

The parties were married in August 1979. After several years of marriage and two children (Farrah, born November 10, 1976, and Justin born May 13, 1980) they were divorced on January 13, 1987. In contemplation of the divorce the parties entered into a Stipulation and Property Settlement Agreement in December 1986. This agreement was incorporated into the divorce judgment. As relevant to the issues presented the agreement in part provides:

"Husband and Wife declare the following: ... (4) Husband and Wife intend, and it is the purpose of this Agreement, to make a complete and final settlement of all claims that Wife may have against Husband for alimony, spousal support, maintenance and similar payments intended to provide fairly and adequately for her support, and to finalize their agreements as to the division of property owned by them or either of them" ...

"For reasons set forth above, and in consideration of the mutual covenants and

promises of the parties hereto, Husband and Wife agreed as follows:" ...

"(3) *Alimony.* Neither party shall receive alimony from nor pay alimony to the other party....

(5) *Child Support.* Husband shall pay Wife the sum of One Hundred Dollars ($100.00) per month per child until each child attains the age of eighteen (18) years or graduates from high school ...

(6) *Property Owned by Parties.* The parties own a 1984 Chevrolet Cavalier, as well as household goods and furnishings and other personal property.

(7) *Division of Property—Property Apportioned to Wife.* There is hereby apportioned, set aside, transferred, and confirmed to Wife, free of all claim and demand of Husband, the following items of property that are set aside and transferred to Wife and taken by her with all encumbrances and other obligations to which such items may be subject. The items include the 1984 Chevrolet Cavalier, Christmas tree and household decorations, and Wife's high school memorabilia. Wife will be responsible for the upkeep and insurance on the automobile, and Husband shall make the payments on said vehicle as they become due.

(8) *Division of Property—Property Apportioned to Husband.* There is hereby apportioned, set aside, transferred, and confirmed to Husband, free of all claim and demand of Wife, the following items of property that are set aside and transferred to Husband and taken by him with all encumbrances and other obligations to which such items may be subject. These items include all of his personal property....

(11) *Debts and Obligations.* Husband will be solely responsible for all debts of the marriage, including, but not limited to, debts for farm equipment, supplies, and operations...."

At the time of the divorce both parties were 31 years of age and in good health. Julie, a high school graduate, had an approximate monthly net income of $430 from her employment at a hospital. Scott farmed two quarters of land and worked for an oil field construction company earning $7.00 per hour when work was available. He testified that his income from farming alone was around $11,000.00 per year and was approximately $700 to $800 net per month from all sources.

Although not specifically mentioned in the decree, the parties owned a mobile home which was pledged as security to Midwest Federal. The debt owing Midwest was a joint obligation of the parties upon which they were obligated to make payments of $234.00 per month. At the time of the divorce Julie and the children were no longer occupying the mobile home, having moved to an apartment in Mohall, North Dakota due to marital discord. According to Julie, she never went back to the mobile home after leaving in August 1986. Scott continued to occupy the mobile home until it was repossessed by Midwest Federal who asserted a claim against the parties for a deficiency of $8,985.10. Scott has listed this claim as an unsecured debt in his bankruptcy schedules. Julie is now being dunned by the bank.

Julie began dating her present husband prior to the divorce. They were engaged in February 1987, and subsequently married in April 1987.

The 1984 Chevrolet awarded to Julie was necessary for her daily transportation. When Scott failed to maintain the payments on the vehicle Julie and her present husband, in order to prevent its repossession, took out a bank loan and paid Ford Motor Credit Company the payoff balance of $3,622.22. They then commenced an action in state court for this amount and on April 18, 1988, received a default judgment against Scott in the sum of $3,727.42 inclusive of court costs.

Julie testified that the vehicle was necessary for transportation and that she could not make the payments by herself. Until her remarriage, her income was insufficient to provide for the complete support of herself and children necessitating her use of AFDC payments and food stamps. Scott agreed at trial that Julie could not have supported herself or the children on her income alone but he felt that her in-

come would have been sufficient when the $200 per month child support payment was taken into consideration.

Julie acknowledged that alimony was never discussed with Scott because she knew he would never pay it and she felt she could not rely on it. She simply wanted her transportation provided for and all other debts, including the Midwest obligation, taken care of by Scott so that there would be more money available for the living expenses of herself and the children.

Scott not only failed to maintain the automobile and mobile home payments but also failed to pay one-half of the attorney's fees as required by the decree and is $950.00 in arrears on his child support obligation.

### Conclusions of Law

Julie takes the position that given the circumstances at the time of the divorce, the state court judgment of $3,727.42 resulting from the satisfaction of the automobile loan and the balance due in consequence of the mobile home deficiency are in the nature of alimony, maintenance and support, and thus nondischargeable under section 523(a)(5) of the Bankruptcy Code. Scott, pointing to the language of the Agreement itself says that the parties' intent was nothing more than a division of property.

Section 523 excludes from discharge debts:

(a)(5) To a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) Such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

This court in previous decisions has held that the designation and labeling of the obligation in the agreement itself are not determinative of the nature of the award in a bankruptcy context. *In re McConnell,* 88 B.R. 218, 221 (Bankr.D.N.D. 1988); *In re Hillius Farms,* 38 B.R. 334, 335 (Bankr.D.N.D.1984). Of primary consideration is the intent of the parties or the divorce court in creating the obligation. That is, what function was the obligation or award intended to serve at the time? *In re McConnell, supra; In re Yeates,* 807 F.2d 874 (10th Cir.1986). *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983); *In re Eikenberg,* 107 B.R. 139, 141 (Bankr.N. D.Ohio 1989); *In re Messnick,* 104 B.R. 89, 92 (Bankr.E.D.Wis.1989). This determination is made by looking not at the language of the agreement but at its substance in light of surrounding circumstances. Various courts have endeavored to list those circumstances which are indicative of whether a particular obligation is a property division or nondischargeable support. This court has also commented upon those factors relevant to such a determination. From a review of its own decisions and those of other courts, the following are appropriate consideration:

(1) The age, health, educational level, skills, earning capacity and other resources of the respective parties;

(2) Whether there were minor children involved;

(3) Whether the obligation balances disparate incomes of the parties;

(4) Whether there was a need for support at the time necessary to provide for the daily needs of the recipient and any children;

(5) Whether a support or maintenance obligation also exists;

(6) Whether any other support award would be inadequate absent the obligation in question;

(7) Whether one party relinquished a right to support under state law in exchange for the obligation;

(8) Whether the obligation terminated upon death or remarriage of the recipient;

(9) Whether the obligation extended over time or is in a lump sum;

(10) How the obligation is characterized under state law;

(11) Tax treatment of the obligation. *See, In re McConnell, supra; In re Seablom,* 45 B.R. 445, 450 (Bankr.D.N.D.1984); *In re Hillius Farms, supra; In re Eikenberg, supra; In re Kodel,* 105 B.R. 729 (Bankr.S. D.Fla.1989); *In re Messnick, supra.*

In *Yeates, supra,* the court said that a very important factor was the spouse's need for support at the time of the decree. In that case the court had before it a settlement whereby the parties waived any right to alimony but the debtor was to assume and pay a mortgage on a home awarded to the wife. The court concluded that the wife was in dire financial circumstances at the time and the payment by the debtor was necessary for her to retain one of her basic necessities, hence the obligation was regarded as nondischargeable. Similarly in the case of *In re Mizen,* 72 B.R. 251 (Bankr.N.D.Ohio 1987) the debtor agreed to be solely responsible for certain debts including a mortgage on the residence. The court there concluded the obligation to be nondischargeable because it assisted in providing shelter to the debtor and two minor children.

■ The agreement presently before the court is in itself not a model of clarity for, in paragraph four, the parties state the purported purpose of the agreement to be a settlement of all claims Julie may have against Scott for alimony, spousal support, maintenance and similar payments intended to provide fairly and adequately for her support. The parties then in a later paragraph agree that neither should receive alimony. Reading these two provisions together one may infer that any obligation agreed to was meant by the parties to stand in recognition of Julie's right to alimony and support. The only substantial property awarded to Julie was the 1984 Chevrolet, all other property, including the mobile home, was given to Scott who expressly agreed to assume all debts of the marriage including the balance due on the car. At the time this agreement was entered into Julie's monthly income was approximately one-half of that of Scott. Scott knew this was insufficient to take care of her necessities. But when her income was coupled with the anticipated $200.00 per month child support bringing her monthly net income to approximately $600.00 per month, he felt she would have sufficient financial resources to take care of her and the children's needs. Obviously Scott could not have reached such a conclusion if in calculating Julie's net income, she were to remain obligated for a $234.00 per month mobile home payment as well as car payments. Even with child support, her monthly net income would be effectively wiped out leaving her with no means at all with which to provide for herself and the two minor children. Indeed, as Julie testified, the income was insufficient as she has to resort to AFDC and food stamps. Clearly, the $200.00 per month child support would have been grossly inadequate if she had also remained obligated on the automobile and mobile home obligations. The court believes that Julie, in anticipation of Scott assuming all mutual debts, relinquished her rights to alimony and support and that both of the parties intended such assumption to be critical to her financial stability. The court believes that the unequal division of debts was intended by the parties at the time as a means of balancing the disparity in incomes and alleviating the impossible financial strain that would be created for the family if Julie had remained liable for those debts. Our own Circuit has noted with similar effect that undertakings by one's spouse to pay the other's debts can constitute support where, under the circumstances, it was necessary to help meet monthly living expenses. *In re Williams,* 703 F.2d 1055, 1057 (8th Cir. 1983).

Scott suggests that Julie's need for the support and her indicated income levels were artificial because she remarried shortly after the divorce. Nothing in the evidence convinces the court that Scott was misled into signing the agreement or that he felt Julie had nondisclosed financial resources. The parties were granted a di-

vorce on the grounds of irreconcilable differences with neither the agreement nor the decree fixing blame. What subsequently occurred in Julie's life is irrelevant to the issue before the court, it being inappropriate to expand a dischargeability issue into an assessment of subsequent financial circumstances. *Draper v. Draper*, 790 F.2d 52, 54 (8th Cir.1986).

The court concludes from the facts and circumstances that Scott's assumption of the marital debts was essential to Julie's economic security and thus were in the nature of maintenance and support. Accordingly, the State Court Judgment in the sum of $3,727.42 and the $8,985.10 balance due in consequence of the deficiency on the mobile home loan are nondischargeable support obligations under section 523(a)(5) of the United States Bankruptcy Code. Judgment may be entered in accordance herewith in favor of the plaintiff, Julie Streich, and against the defendant/Debtor, Scott Osterberg.

SO ORDERED.