**In re Michael M. LARSON, a/k/a Mike Larson, a/k/a Michael Larson, Debtor.**

**Cindy SADOWSKY, Plaintiff,**

v.

**Michael M. LARSON, a/k/a Mike Larson, a/k/a Michael Larson, Defendant.**

**Bankruptcy No. 93–30917.
Adv. No. 94–7003.**

United States Bankruptcy Court,
D. North Dakota.

July 6, 1994.

Scott J. McDonald, Bowman, ND, for plaintiff.

Gene F. Buresh, Dickinson, ND, for defendant.

Phillip D. Armstrong, Trustee.

### MEMORANDUM & ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The plaintiff commenced the above-entitled adversary proceeding by Complaint filed on January 10, 1994, seeking to have an obligation stemming from a monetary judgment entered by a state court in connection with a divorce decree declared nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The matter directly before the court arises by cross motions for summary judgment filed by the defendant, Michael M. Larson (Larson), and by the plaintiff, Cindy Sadowsky (Sadowsky), on May 27 and June 24, 1994, respectively. Each party asserts that an examination of the pleadings, papers, affidavits, and accompanying materials demonstrate that no genuine issue of material fact exists in this case and that he or she is entitled to a judgment as a matter of law.

### FACTUAL BACKGROUND

On July 13, 1982, the Stark County District Court for the State of North Dakota entered a judgment of divorce which dissolved the marriage of the plaintiff, Cindy

Sadowsky, and the defendant, Michael M. Larson. After an evidentiary hearing on the matter, the state court drafted an order for judgment and made relatively detailed findings of fact and conclusions of law. Sadowsky was awarded custody of the two children born during the marriage. The court specifically delineated or categorized the obligations of the respective parties in its "findings of fact" to include, *inter alia*, the following:

6. As and for *child support,* the Plaintiff [ (Michael M. Larson) ] shall pay to the Clerk of the District Court the sum of Two Hundred ($200.00) Dollars per month per child until each reaches the age of majority.... The Plaintiff shall also be responsible for reasonable necessary expenses for dental, medical, optical and surgical care for the minor children. The Plaintiff shall also be entitled to the dependency exemptions for the tax year 1982 and all subsequent years.

7. The parties have previously divided personal property of the marriage. The Court hereby grants to each party the *property* that they presently have in their possession. More specifically, the Plaintiff shall receive the 1977 Chevrolet Suburban and the Defendant [ (Cindy Sadowsky) ] shall receive a *1981 Mercury Cougar.*

8. After considering the Ruff–Fisher guidelines, the Court determines that the Plaintiff shall pay *alimony and support* in the amount of One Hundred an no/100 ($100.00) per month until the Defendant's death or until she remarries. *In awarding this amount, the Court recognizes that the Defendant is able to contribute to her support but simply is not able to support herself. In addition to the amounts stated above, the Plaintiff shall pay as alimony the debt on the 1981 Mercury Cougar.* Any amounts which are in arrears as of this date shall be brought up to date and *shall be considered alimony* to the Defendant. The *alimony* as stated above shall be paid to the Clerk of the District Court and the Defendant shall be responsible to make the payments for the 1981 Mercury Cougar.

*See* Stark County District Court Findings of Fact, Conclusions of Law & Order for Judgment, at 2–3 (July 8, 1982) (emphasis added). Additionally, the court made "conclusions of law" which substantially parrot the findings of fact and include, *inter alia*, the following:

4. As for *child support,* the Plaintiff shall pay to the Clerk of the District Court the sum of Two Hundred and no/100 ($200.00) per month per child until each reaches the age of majority. The child support payments shall start July 10, 1982, and continue each month thereafter.... The Plaintiff shall also be responsible for reasonable necessary expenses for dental, medical, optical and surgical care for the minor children. The Plaintiff shall also be entitled to the dependency exemptions for the tax year 1982 and all subsequent years.

5. The parties shall each receive the *property* which they have in their possession. The Plaintiff shall receive the 1977 Chevrolet Suburban and the Defendant shall receive the *1981 Mercury Cougar.*

6. The Plaintiff shall pay alimony and support in the amount of One Hundred and no/100 Dollars per month until the Defendant's death or until she remarries. The Plaintiff shall also pay *as alimony* an amount equal to the monthly car payment on the 1981 Cougar. *This alimony* shall continue until an amount has been paid to the Defendant equal to the unpaid balance of the debt on the 1981 Cougar. Any amounts which are in arrears as of this date shall be brought up to date and *shall be considered alimony* to the Defendant. *All of the alimony as stated above* shall be paid to the Clerk of the District Court.

7. .... The Defendant shall be responsible for the debt ... with Ford Motor Credit Corporation for the 1981 Mercury Cougar.

*Id.* at 3–4 (emphasis added). *See also* Judgment of Stark County District Court, at 2–3 (July 13, 1982); Order Confirming Child Support, Spousal Support and Attorney Fees Arrearages, at 1 & 2 (July 29, 1987) (designating arrearages on obligation which represented an amount equivalent to payment on 1981 Mercury Cougar as "spousal support").

The plaintiff's obligation for alimony and child support was modified at various times subsequent to the entry of the divorce judgment.[1] On *at least* two occasions, Larson was deemed to be in contempt of court for willfully failing to comply with the judgment for divorce and make the court-ordered payments:

> The Court herewith determines that [Larson] is willfully, knowingly and intentionally in contempt of this Court by virtue of his disregard of the Court's Judgment requiring [him] to provide *modest spousal support* of $100.00 per month, and by intentionally permitting the repossession of one 1981 Mercury Cougar automobile, when in fact [Larson] has secured housing and reliable transportation for his present family.[2]

*See* Findings of Fact, Conclusions of Law, Order for Contempt and Order for Amended Judgment, at 7–8 (July 17, 1986) (emphasis added).

Larson continued to remain significantly in arrears on the court-imposed obligations. In an apparent effort to execute on the outstanding indebtedness, Sadowsky moved the state court for an order "reducing the arrearage for spousal support to money judgment" by motion filed on August 5, 1993. The motion was accompanied by an affidavit and schedules from the clerk of district court who confirmed the arrearage of "spousal support". The court entered an order on August 30, 1993, reducing the arrearage of "spousal support", in the amount of $13,676.89, to money judgment.[3] The court further ordered that the sum of $8,390.19 was due as pre-judgment interest and that additional interest on the aforementioned sums would accrue at a rate of 12% per annum from the date of entry of judgment until paid.

The defendant-debtor, Larson, filed for relief under Chapter 7 of the United States Bankruptcy Code on October 28, 1993. As of the date of the bankruptcy filing, the outstanding obligation owed to Sadowsky was $22,466.10 in aggregate.[4] The creditor-plaintiff, Sadowsky, commenced the above-entitled adversary proceeding on January 10, 1994, seeking to have the aforementioned amount declared nondischargeable pursuant to § 523(a)(5) of the United States Bankruptcy Code.

On April 13, 1994, Larson propounded Requests for Admissions, Interrogatories, and Requests for the Production of Documents in connection with the adversary proceeding. On Friday, May 13, 1994, the date that discovery requests were due under the Rules of Procedure and the deadline for discovery pursuant to this court's pretrial order, counsel for Sadowsky mailed completed, but "unsigned", copies of the requested items together with a letter explaining why they

---

1. In an order modifying the original judgment of divorce, the state court made findings of fact which included the following:

 > That said Judgment on July 8, 1982, provided that [Larson] furnish spousal support or alimony to the Defendant in the amount of $100.00 per month until such time as the Defendant either remarries or dies. *As further spousal support,* said Judgment required [Larson] to pay all indebtedness upon the 1981 Mercury Cougar automobile which was to be the property of the Defendant, with *all of the foregoing alimony or spousal support* to be paid to the Clerk of the District Court....

 *See* Findings of Fact, Conclusions of Law, Order for Contempt and Order for Amended Judgment, at 2 (July 17, 1986) (emphasis added).

2. Larson was responsible, under the judgment for divorce, for making regular installment payments of an amount which was *equivalent* to the payment for the 1981 Mercury Cougar, and not for the actual obligation itself. Sadowsky was the sole obligor. Since Larson either failed or refused to make those payments, Sadowsky was unable to satisfy the indebtedness and the automobile was eventually repossessed by the obligee.

3. The outstanding arrearage of $13,676.89 included an obligation of $9,578.31, which represented an amount that was equivalent to the outstanding indebtedness of the 1981 Mercury Cougar. The state court did not set forth the statutory basis for reducing the arrearages to monetary judgment in its order.

4. Although the parties vehemently disagree over whether or not the obligation is dischargeable under the Bankruptcy Code, they do not appear to dispute the actual "amount" of the indebtedness. *See, e.g.,* Complaint & Answer and Schedule F.

were not executed.[5] The documents were subsequently executed and forwarded to counsel for the defense shortly after the 16th of May.

The parties to this dispute predicate their summary judgment motions, for the most part, on divergent views regarding the nature or characterization of the debt initially created by the pre-bankruptcy divorce order. Sadowsky essentially avers that the indebtedness is in the nature of *alimony or support* and should therefore be declared nondischargeable pursuant to § 523(a)(5). Larson, on the other hand, contends that the obligation arises from a *property settlement* and is therefore dischargeable. In support of his position, Larson argues that reducing the obligation which stemmed from a judgment of divorce to a monetary judgment, conclusively establishes that the debt was in the nature of a property distribution. Larson further argues that Sadowsky's failure to properly execute the Requests for Admission within the time parameters of Rule 36 of the Federal Rules of Civil Procedure conclusively establishes the nature of the obligation.

### CONCLUSIONS OF LAW

#### 1.

■ Rule 56 of the Federal Rules of Civil Procedure governs the grants of summary judgment and is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The primary purpose for granting a summary judgment motion is to promptly dispose of actions and avoid unnecessary trials when no genuine issue of material facts exists. The summary judgment mechanism is thus not a disfavored procedural shortcut, but rather an integral component of the Federal Rules of Civil Procedure as a whole, which are fashioned to secure an inex-

pensive, speedy, and just determination of every case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ The initial burden is always squarely on the movant to establish the lack of any genuine issue of material fact, with the party opposing the motion to be given the full benefit of all favorable factual inferences. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Froholm v. Cox,* 934 F.2d 959, 961 (8th Cir.1991); *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 519 (8th Cir.1988); *Olson v. United States (In re Olson),* 154 B.R. 276, 279 (Bankr.D.N.D. 1993). The party opposing a motion for summary judgment may not, however, merely rely on the naked allegations or general denials contained in its pleadings or papers. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356 (opining that when the movant has carried the burden in the first instance under Rule 56, "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

■ The express language of Rule 56 makes it incumbent upon the nonmoving party to come forward with specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). Moreover, the mere existence of some factual dispute will not overcome an otherwise properly supported summary judgment motion. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510. The factual dispute must be "material". "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. There is no genuine issue of material fact if the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita,* 475 U.S. at

---

5. Sadowsky executed a sworn affidavit indicating that she was hospitalized in Nevada the week prior to the date the documents were due and, consequently, was unable to execute and mail them until Monday, May 16, 1994.

587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be grant." *Anderson,* 242 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). Similarly, those factual disputes that are unnecessary or irrelevant to the ultimate resolution of the issue won't be counted. *Id.* at 248, 106 S.Ct. at 2510. Summary judgment is, however, inappropriate in those cases in which different ultimate inferences may be properly drawn. When considering the merits of a summary judgment motion, it is not the function of the court to weigh evidence and resolve the truth of the matter but to ascertain whether there exists a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510–11; *Olson v. United States (In re Olson),* 154 B.R. 276, 279 (Bankr. D.N.D.1993).

It is with the foregoing standard in mind coupled with a careful review of the pleadings, papers, and submitted documents that the court proceeds to resolve the issues raised by the parties.

2.

▮▮▮▮ 11 U.S.C. § 523(a)(5) excepts from discharge any debt owed to a former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child when awarded in connection with a "divorce decree or *other order of a court of record*" if the obligation is *"actually in the nature of alimony, maintenance, or support".* 11 U.S.C. § 523(a)(5) (emphasis added). In ascertaining whether a particular debt is actually in the nature of "alimony", "support" or "maintenance" under § 523(a)(5) or a property settlement, neither state law nor the divorce decree's particular designation of the debt is determinative of the nature of the award in the bankruptcy context. *Streich v. Osterberg (In re Osterberg),* 109 B.R. 938, 941 (Bankr.D.N.D.1990); *Hillius v. Hillius (In re Hillius Farms),* 38 B.R. 334, 336 (Bankr.D.N.D.1984); *Norman v. Norman (In re Norman),* 13 B.R. 894, 899 (Bankr.W.D.Mo.1981) (opining that bankruptcy courts are not bound by the labels or characterizations contained in the divorce decree but should give weight to the findings of the prior court). *See Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th

Cir.1983) (noting that the determination of whether a particular obligation represents a dischargeable property division or a nondischargeable support obligation, is a federal rather than a state question). *Cf. Lipp v. Lipp,* 355 N.W.2d 817, 820 (N.D.1984) (recognizing that the term "alimony" as used in North Dakota statutes and case law is an ambiguous term); *Seablom v. Seablom,* 348 N.W.2d 920, 924 (N.D.1984). The critical inquiry is the function the particular award was intended to serve at the time it was made. *Adams v. Zentz,* 963 F.2d 197, 200 (8th Cir.1992); *In re Williams,* 703 F.2d at 1057. The circumstances of the parties subsequent to the entry of the judgment for divorce is irrelevant to that inquiry. *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984). *See Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986) (ruling that the statutory text of § 523(a)(5) does not contemplate an ongoing assessment of need as the circumstances of the parties change); *McConnell v. McConnell (In re McConnell),* 88 B.R. 218, 221 (Bankr.D.N.D.1988). Consequently, the fact that a particular obligation may have become unduly burdensome cannot be a factor in determining the legal effect of a debtor's ability to effectuate a discharge. *Poolman v. Poolman,* 289 F.2d 332, 335 (8th Cir.1961).

▮▮▮▮ An obligation stemming from a property division is usually premised upon each spouse's respective rights to an equitable share of property acquired during the marriage for their mutual benefit. Spousal support, by contrast, generally serves the functions of providing maintenance and rehabilitative support. It is often difficult to determine the true nature of a particular obligation because of the reality that awards for support and property division can be inextricably interrelated.

▮▮▮▮ In order to assess the function a particular award was intended to serve at the time it was made, bankruptcy courts generally look beyond the four corners of the divorce decree to all the circumstances surrounding the creation of the liability. Courts are often required to conduct an evidentiary proceeding and hear extrinsic evidence, with the party seeking a determination of nondischargeability bearing the burden of proof. A

multi-factored analysis is frequently employed to assist a court in determining the true nature of the award or the intent of the state court in fashioning the award. *See, e.g., In re Osterberg*, 109 B.R. at 941–42. However, in circumstances in which the divorce decree and supporting court documents are so completely unambiguous (as in the case at bar) that the actual nature of the award and the intent. of the court order is abundantly clear, it becomes unnecessary to engage in a strict factors analysis. *McConnell v. McConnell (In re McConnell)*, 88 B.R. 218, 221 (Bankr.D.N.D.1988); *Seablom v. Seablom (In re Seablom)*, 45 B.R. 445, 450 (Bankr.D.N.D.1984); *Hillius v. Hillius (In re Hillius Farms)*, 38 B.R. 334, 336 (Bankr. D.N.D.1984); *Norman v. Norman (In re Norman)*, 13 B.R. 894, 899 (Bankr.W.D.Mo. 1981). Any other rule would effectively turn a bankruptcy court into a court of domestic relations and inevitably force an unnecessary rehash, often years later, of the very same evidence that the state court carefully weighed when balancing the equities of the case and the respective needs and abilities of the parties to the dissolution proceeding.

 The clarity and specificity of the state court order as well as the other supporting court documents in the instant case, enables this court to readily determine that the essence of the liability and the substance of the obligation is actually in the nature of *support*. The decree of dissolution in the instant case contains clearly and separately delineated provisions for child support, property division, and spousal support. The court documents themselves placed the *debt* in the category of spousal support and in fact specifically denominated the disputed obligation as "alimony" and "spousal support". At the time the state court made its award, it found that Sadowsky was simply unable to support herself. Although the periodic installments were identical to the payments of the 1981 Mercury Cougar that was awarded as part of a property distribution, the debtor's obligation to pay an amount equivalent to the monthly payment of the vehicle does not represent a means of dividing property through periodic payments. The obligation was clearly designed to effectuate the purposes of support by enabling the debtor's

former spouse to retain the basic necessity of transportation and thereby ensure that her daily needs, as well as the needs of the children of the marriage, could be satisfied. *See generally, Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir.1983) (opining that provisions for the payment of expenditures for necessities and the ordinary staples of everyday life are frequently reflective of a support function); *Stamper v. Stamper (In re Stamper)*, 131 B.R. 433, 435 (Bankr.W.D.Mo.1991). Moreover, "[t]he fact that arrearages under a support order are reduced to a money judgment does not alter the nature of the debt from a non-dischargeable 'support' obligation to a dischargeable debt" since the underlying character of the liability remains unchanged. *Shine v. Shine (In re Shine)*, 43 B.R. 686, 687 (Bankr. D.N.H.1984). *See Hylek v. Hylek*, 148 F.2d 300, 302 (7th Cir.1945); *Alexander v. Alexander (In re Alexander)*, 92 B.R. 667, 669–70 (Bankr.N.D.Tex.1988). *See also 3 Collier on Bankruptcy* ¶ 523.15, at 523–118 (15th ed. 1994). *.Cf. Seablom v. Seablom*, 348 N.W.2d 920, 923 (N.D.1984) (noting that the court's order for enforcement of a particular obligation does not determine the nature of the award).

### 3.

Larson contends that the nature of the particular debt in this case was conclusively established to be a dischargeable property obligation in light of Sadowsky's failure to timely execute admissions under Rule 36 of the Federal Rules of Civil Procedure. For reasons set forth below, this court cannot agree.

 Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions and is made applicable to bankruptcy proceedings by Bankruptcy Rule 7036. Rule 36 provides in pertinent part that:

**(a) Request for Admission.** A party may serve upon any other party a written request for the admission ... the truth of any matters ... set forth in the request that relate to statements or opinions of fact or of the application of law to fact....

Each matter of which an admission is requested shall be separately set forth. *The matter is admitted unless, within 30 days after service of the request,* or within such shorter or longer time as the court may allow or as the parties may agree in writing, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, *signed by the party or the party's attorney . . . .*

**(b) Effect of Admission.** *Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.* Subject to the provision of Rule 16 governing amendment of a pre-trial order, *the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.*

Fed.R.Civ.P. 36 (emphasis added). Since the plain language of Rule 36 provides that any matter admitted or deemed admitted is conclusively established, it is clear that summary judgment may be appropriately granted on the basis of requests for admissions if the facts as admitted are dispositive. 4A *Moore's Federal Practice* ¶ 36.08, at 36–75 (2d ed. 1994). *See United States v. 2204 Barbara Lane,* 960 F.2d 126, 129 (11th Cir. 1992); *Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966). *See also* Fed. R.Civ.P. 56(c) (contemplating the binding effect of Rule 36 admissions by permitting a court to grant summary judgment based on, *inter alia,* the "admissions on file"). Larson asserts that Sadowsky's failure to execute admissions within the time parameters of Rule 36 conclusively establishes the actual nature of the obligation for purposes of 11 U.S.C. § 523(a)(5). Assuming, *arguendo,* that the matters embraced by the admissions are deemed admitted or conclusively established as Larson urges, Sadowsky would be

bound *only* to those matters actually and specifically set forth:

*REQUEST FOR ADMISSION NO. 1:* Admit that the 1981 Mercury Cougar automobile was listed as a property settlement in the divorce action between the parties.

*REQUEST FOR ADMISSION NO. 2:* Admit that any amounts to be paid pursuant to the 1981 Mercury Cougar did not cease to be paid upon marriage or death of the Plaintiff or Defendant in this action.

. . . .

*REQUEST FOR ADMISSION NO. 10:* Admit that the property settlement stipulation in the original divorce action between the parties indicated that the 1981 Mercury Cougar was to be a "property settlement".

*REQUEST FOR ADMISSION NO. 11:* Admit that the amount claimed by Defendant in this action is too excessive to be fairly considered in the nature of support.

Exhibit "A". The scope of the aforementioned admissions essentially address whether a specific *chattel* or item of personalty, namely the 1981 Mercury Cougar, was awarded to Sadowsky as part of a property settlement or equitable distribution of marital assets. Clearly, it was. Sadowsky concedes as much. However, counsel for the debtor fails to distinguish between the award of the actual vehicle itself and the debtor's *obligation* to pay an amount which was *equivalent* to the outstanding indebtedness on the vehicle.[6] It is the character and function of that obligation which is determinative. The requested admissions are completely silent with respect to the character or nature of the "obligation". Courts will not extend the conclusive effect of admissions to any arguable inference which may be drawn from admitted facts. *Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co.,* 988 F.2d 414, 427 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993).

Even if some twisted or stretched interpretation of the aforementioned admissions leads to the conclusion that Larson urges, his argument would still fail.

---

**6.** As previously set forth, the debtor under the divorce decree was responsible to make periodic payments for an amount which was equivalent to

the payment of the outstanding indebtedness of the 1981 Mercury Cougar, not the actual obligation itself.

A court has the discretion to permit the amendment or withdrawal of an admission irrespective of whether or not a formal motion has been filed. 4A *Moore's Federal Practice* ¶ 36.08, at 36–77–78 (2d ed. 1994). *See Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. 1188, 1194 (D.E.D.Mo.1980) (ruling that a formal motion to withdraw the admission was unnecessary since the defendant's denial was obvious throughout the course of the litigation). A bankruptcy court may thus permit a party to file an answer to a request for admissions *after* the expiration of the time afforded by Rule 36 in cases in which the presentation of the merits of the action would be otherwise subserved, and the opposing party is not prejudiced by allowing untimely responses. Fed.R.Civ.P. 36(b). *See Beatty v. United States,* 983 F.2d 908, 909 (8th Cir.1993); *W.J. Warren v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 544 F.2d 334, 339–340 (8th Cir.1976); *United States v. Lake Killarney Apartments, Inc.,* 443 F.2d 1170, 1170 (5th Cir.1971); *Pleasant Hill Bank v. United States,* 60 F.R.D. 1, 2–3 (D.W.D.Mo.1973). *See also Latendresse v. Latendresse,* 294 N.W.2d 742, 747 (N.D. 1980).

 Although this court does not countenance the departure from the clear dictates of the Federal Rules of Civil Procedure, the interests of justice are not furthered by automatically determining all the issues of an adversary proceeding and perfunctorily entering summary judgment against a party simply because a deadline is missed. *See Hadra v. Herman Blum Consulting Eng'rs,* 74 F.R.D. 113, 114 (D.N.D.Tex.1977). Allowing the tardy admissions in this case to stand, or permitting the withdrawal of the otherwise deemed admissions, unquestionably facilitates "the development of the case in reaching the truth". 4A *Moore's Federal Practice* ¶ 36.08, at 36–78–79 (2d ed. 1994). This court is further convinced that Larson would not be prejudiced to any degree thereby:

> "[t]he prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions."

*Farr Man & Co., Inc. v. M/V Rozita,* 903 F.2d 871, 876 (1st Cir.1990) (quoting *Brook Village N. Assocs. v. General Elec. Co.,* 686 F.2d 66, 70 (1st Cir.1982)). *See* Wright & Miller, *Federal Practice & Procedure* § 2264, at 745 (1970) (indicating that the reference to "prejudice" in the Rule "is to the prejudice stemming from reliance on the binding effect of the admission."). An examination of the statements of counsel, the affidavits, and the exhibits leads this court to conclude that the *slight* delay in executing the admissions in this case was not due to a lack of good faith on the part of Sadowsky or her counsel. Not only did Larson receive the executed admissions within days of the deadline, he was fully aware at the outset of this litigation that Sadowsky denied the debt was actually in the nature of a property settlement. The fact that she considered the obligation to be actually in the nature of support or maintenance went to the very heart of her claim for nondischargeability as set forth in her complaint.

### 4.

Accordingly, and for reasons stated, **IT IS HEREBY ORDERED** that the defendant's motion for summary judgment is in all things **DENIED. IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment is in all things **GRANTED,** and that judgment be entered in favor of the plaintiff-creditor, Cindy Sadowsky, and against the defendant-debtor, Michael M. Larson, a/k/a Mike Larson, a/k/a Michael Larson, in the amount of $22,466.10, said sum being nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**